## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

CHASE WEBB BURSON,

       Petitioner,

    vs.                            Civ. No. 09-985  JCH/WP
                                          Cr. No. 06-252 JCH

UNITED STATES OF AMERICA,

       Respondent.

## MEMORANDUM OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before the Court on *Defendant Chase Webb Burson's Motion To Vacate Sentence* under 28 U.S.C. § 2255.  [Doc. 1, Civ. No. 09-985; Doc. 95, Cr. No. 06-252]  On reference by this Court under 28 U.S.C. § 636(b)(1)(B), (b)(3), the Magistrate Judge held an evidentiary hearing on August 23, 2013, and on March 13, 2014, issued the *Magistrate Judge's Proposed Findings of Fact, Conclusions of Law, and Recommended Disposition* ("PFRD"). [Doc. 50, Civ. No. 09-985; Doc. 132, Cr. No. 06-252]  On April 14, 2014, Petitioner filed *Chase Burson's Objections to Magistrate Judge's Proposed Findings of Fact, Conclusions of Law, and Recommended Disposition* ("Objections").  [Doc. 53, Civ. No. 09-985 (timely pursuant to extension of time; Doc. 136, Cr. No. 06-252]  The Court has conducted de novo review of the record, including a review of the transcripts of the August 23, 2013 and October 11, 2006 hearings.  [8/23/13 hearing, Doc. 49, Civ. No. 09-985; 10/11/06 suppression hearing, Cr. No. 06-252]

Having reviewed the motion, the pleadings, the record, and the relevant law, the Court finds that the Objections are without merit. The Court will overrule the Objections, adopt the PFRD, deny Petitioner's motion to vacate sentence, and dismiss the case with prejudice.

## **BACKGROUND**

At about 2:00 a.m. on March 8, 2005, Officer McPheeters of the Farmington police was on patrol when he noticed a car with an expired license plate parked outside a convenience store.[1]  McPheeters ran the license plate, finding out that it was registered to Daniel Vigil, who had an outstanding arrest warrant.  Because this was a common name, McPheeters checked further to find out whether the registered owner of the car was the same person for whom there was a warrant; McPheeters was informed that the same address was listed for both.

When a person left the convenience store and got into the driver's seat of the parked car, McPheeters approached the open window, identified himself, and told the driver that there was an arrest warrant for the car's owner.  The driver—Petitioner—was not able to produce identification or documentation for the car.  On the floor of the car McPheeters saw a clear ziplock baggie, which he illuminated with his flashlight; the baggie appeared to contain methamphetamine.  McPheeters had been on the force for fourteen years and had seen such packages of methamphetamine hundreds of times, maybe more than a thousand times.  Petitioner immediately became extremely nervous.  McPheeters said that it looked like a bag of methamphetamine.  After Petitioner reached down toward the floor of the car twice, despite being warned not to do so, McPheeters told Petitioner to turn off the car.  After Petitioner

---

[1] District Judge Friedman, sitting by designation and deciding the motion to suppress in Cr. No. 06-252, found that Officer McPheeters was a highly credible witness and therefore found that "what he had to say is exactly how it happened at that particular scene."  [Tr. 10-11-06, p. 99, Cr. No. 06-252]  This statement of facts regarding the interaction at the car is taken from Judge Friedman's oral findings and Officer McPheeters's testimony at the suppression hearing in the criminal case; the statement of facts in Petitioner's *Motion To Vacate Sentence* [Doc. 1, Civ. No. 09-985] is consistent.

reached down two more times, McPheeters asked him to get out of the car and advised him of his *Miranda* rights; Petitioner confirmed that he understood those rights.

McPheeters then asked Petitioner if the baggie contained methamphetamine, and Petitioner confirmed that it did. McPheeters placed Petitioner under arrest and took him to a patrol unit, in handcuffs.

When McPheeters went back to Petitioner's car to retrieve the baggie, he saw and removed a loaded handgun under the driver's seat. He also saw a gap around the console, containing what appeared to be a baggie of cocaine. McPheeters went back to Petitioner, saying he believed he saw a bag of cocaine; Petitioner admitted that was correct and gave instructions on how McPheeters could retrieve the cocaine. After removing the baggie of cocaine, McPheeters saw behind it another bag of what appeared to be a substantial amount of methamphetamine. He left that bag until photographs were taken.

After being booked into the police station, Petitioner asked to speak to McPheeters. Petitioner was reminded of his *Miranda* rights. During a videotaped interview, Petitioner made further incriminating statements.

Petitioner was originally charged in state court for these offenses, including trafficking cocaine and possession of methamphetamine with intent to distribute—with a total potential exposure of thirteen years. Another case was pending against Petitioner in state court, exposing him to a total of five and one-half years for offenses committed in December 2004. The State Assistant District Attorney testified that Petitioner faced a total of eighteen and one-half years on both cases, if convicted and if all sentences were run consecutively (which she testified was highly unlikely). The State ADA offered a plea agreement, under which both cases would be resolved by Petitioner pleading guilty to one fourth-degree and one third-degree felony—a

maximum exposure of four and one-half years if consecutive or three years if concurrent.[2]  She testified that this was a "very generous" plea offer, "[p]robably too generous," and that she had "never bent over backwards so much for a defendant" before or afterward.  Petitioner's State Court Counsel advised Petitioner that this was a good offer, and could mean as little as a three-year sentence with as little as one and one-half years in prison under the good time provisions then applicable.

The State ADA set a date by which her offer had to be accepted, advising that otherwise she would dismiss the cases because the federal authorities were interested in prosecuting.  When that date passed, the plea offer was rejected and the State ADA dismissed the state cases.

In 2006, the United States filed a criminal complaint for these offenses [Doc. 1, Cr. No. 06-252], followed by the Indictment [Doc. 7, Cr. No. 06-252] charging Petitioner with four counts for the March 8, 2005 offenses:  possession with intent to distribute 50 grams and more of a mixture or substance containing a detectable amount of methamphetamine, contrary to 21 U.S.C. § 841(a)(1) and (b)(1)(B); possession with intent to distribute a quantity of a mixture or substance containing a detectable amount of cocaine, contrary to 21 U.S.C. § 841(a)(1) and (b)(1)(C); and knowingly carrying a firearm during and in relation to a drug trafficking offense, contrary to 18 U.S.C. § 924(c)(1)(A)(i).[3]  Conviction on these three counts would expose Petitioner to a minimum of ten years imprisonment—a mandatory minimum of five years for the drug charges with a consecutive term of five years for the firearm.

Petitioner retained a new attorney, "Trial Counsel," to represent him in federal court. Petitioner testified that the Government made him an offer to plead to a ten-year mandatory

---

[2] The State would not pursue the firearm enhancement.
[3] There was a fourth count for possession with intent to distribute methamphetamine for the offense committed in December 2004; this count was not included in the Superseding Indictment which was filed after rejection of the plea offer.

minimum sentence under the Indictment.   The Government stated that if this plea offer was rejected, a superseding indictment would be filed replacing the count under § 841(b)(1)(B) with a count under § 841(b)(1)(A), based on the purity level of the methamphetamine—which would raise the mandatory minimum on that count from five to ten years, and would raise the total mandatory minimum sentence to fifteen years.

Petitioner rejected the plea.   The Government filed the Superseding Indictment on July 11, 2006.   [Doc. 23, Cr. No. 06-252]

Petitioner then filed a motion to suppress the drugs and Petitioner's statements to McPheeters.   After an evidentiary hearing, District Judge Friedman, sitting by designation, denied the motion to suppress.   At the bench trial, Petitioner presented an expert witness challenging the DEA's estimate of the methamphetamine's purity; if the Court had accepted the defense witness's testimony on purity, the mandatory minimum would have been five years instead of ten.   The Court, however, accepted the Government witness's testimony on purity. Petitioner was convicted on all three counts and sentenced to the mandatory minimum of fifteen years (ten years on the two drug counts, and a consecutive five years on the firearm charge).

Before sentencing, Petitioner retained new counsel—who currently represent him. Petitioner appealed the Court's denial of his motion to suppress his statements (but did not appeal denial of the motion to suppress the drugs and gun).   The Tenth Circuit affirmed.   *United States v. Burson*, 531 F.3d 1254 (10th Cir. 2008).

Petitioner then filed *Defendant Chase Webb Burson's Motion To Vacate Sentence* ("Motion").   [Doc. 1][4]  Following an evidentiary hearing, the Magistrate Judge issued the PFRD recommending that Petitioner's Motion be denied.   Petitioner then filed his Objections.

---

[4] References to docket number without specifying a case number are to Civ. No. 09-985.

## LEGAL STANDARDS

A petitioner claiming ineffective assistance of counsel "must show that counsel's representation fell below an objective standard of reasonableness."  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  To be deficient, counsel's performance must be "outside the wide range of professionally competent assistance."  *Id.* at 690.  "'For counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong.'"  *Heard v. Addison*, 728 F.3d 1170, 1176 (10th Cir. 2013) (quoting *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999)).  The petitioner must also "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694; *see Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (applying *Strickland* test to acceptance of plea offer).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.  "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim."  *Id.* at 700.

"[E]ffective assistance of counsel includes counsel's informed opinion as to what pleas should be entered."  *United States v. Carter*, 130 F.3d 1432, 1442 (10th Cir. 1997).  In the context of rejection of a plea agreement, the petitioner is required to show:  (1) that counsel's performance was deficient, and (2) that "but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed."  *Lafler v. Cooper*, ___ U.S. ___, 132 S.

Ct. 1376, 1385, 182 L. Ed. 2d 398 (2012); *see United States v. Vanderwerff*, 788 F.3d 1266, 1273 (10th Cir. 2015) (observing that *Lafler* applied the well established *Strickland* test); *In re Graham*, 714 F.3d 1181, 1183 (10th Cir. 2013) (per curiam) (stating that *Lafler* was merely an application of *Strickland* and did not establish new rule).  The petitioner who goes to trial rather than accepting a plea offer "may be prejudiced from either a conviction on more serious counts or the imposition of a more severe sentence."  *Lafler*, 132 S. Ct. at 1386.

There is "a strong presumption" that counsel's conduct was "within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.  "Judicial scrutiny of counsel's performance must be highly deferential," and must avoid second-guessing counsel's performance with the assistance of hindsight.  *Id*. at 689.  "[S]trategic decisions made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  *Id*. at 690-91; *Heard v. Addison*, 728 F.3d 1170, 1180 (10th Cir. 2013).  Counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  *Strickland*, 466 U.S. at 690-91.  The reviewing court must assess a particular decision not to investigate for reasonableness under all of the circumstances, "applying a heavy measure of deference to counsel's judgments."  *Id*. at 691.

A petitioner must point to specific lapses by counsel, and must further show that these specific lapses caused prejudice.  *Id*. at 690.  "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  *Strickland*, 466 U.S. at 691; *id*. at 693 (stating that, even if a particular error was unreasonable, petitioner must further show that this error "actually had an

adverse effect on the defense").   Generally pointing out asserted deficiencies, which did not

cause prejudice, does not satisfy a petitioner's burden.  *Id*. at 691-92.

## <u>DISCUSSION</u>

Petitioner's Motion claims that Petitioner's trial counsel in federal court, "Trial Counsel,"

provided ineffective assistance in advising Petitioner regarding the Government's offer to plead

guilty to the Indictment, under which the total mandatory minimum sentence would be ten years.

Petitioner claims that Trial Counsel improperly advised Petitioner that there was a good chance

the Court would grant motions to suppress the evidence and Petitioner's statements, and that

Trial Counsel improperly advised Petitioner that if the Government failed to prove the quantity

of methamphetamine under the Superseding Indictment Petitioner would be acquitted on the

methamphetamine and firearm counts.  Plaintiff claims that he would have accepted the plea

offer if properly advised, and that he was prejudiced because rejection resulted in Petitioner

receiving a mandatory minimum sentence of fifteen years under the Superseding Indictment.

Petitioner's Objections assert a number of lapses:  (1) Trial Counsel "acted to advance his

own interests and disregarded Mr. Burson's interests after Mr. Burson claimed he was

ineffective"; (2) Trial Counsel "made numerous inaccurate statements to the Court in the

underlying criminal case"; (3) Trial Counsel made inaccurate statements in the affidavit he

provided to assist the government in opposing Mr. Burson's motion to vacate"; and (4) "Trial

Counsel gave false testimony during the evidentiary hearing on the motion to vacate."  [Doc. 53,

pp. 3-4]

At the evidentiary hearing on August 23, 2013, the Government presented testimony

from:  the State ADA; Petitioner's State Court Counsel; and Trial Counsel.  Petitioner presented

testimony from:  Petitioner; Petitioner's father; and Petitioner's mother.  Trial Counsel and

Petitioner's witnesses gave contradictory testimony about the advice Trial Counsel gave regarding the plea offer.

The Magistrate Judge proposed detailed findings of fact, including:[5]

8.   Trial counsel ["Trial Counsel"] had seventeen (17) years of federal court experience by the time he represented Petitioner in the criminal proceeding.

9.   Trial counsel informed Petitioner and his family of the relevant federal penalties and explained the difference between state and federal courts.

11.   Trial counsel relayed the United States' plea offer to Petitioner, counsel explained that the plea offer was for ten (10) years imprisonment, and that there was a deadline for acceptance.

12.   Trial counsel informed Petitioner of the penalties he faced in deciding whether to accept or decline the plea offer.   Counsel testified that he told Petitioner that he "was pretty sure he was going to do 15 [years] if, in fact, the purity of the methamphetamine was found to be consistent with what the government was saying."

13.   Trial counsel advised Petitioner that if the United States brought a superseding indictment, the plea offer of ten years mandatory minimum would be withdrawn.

14.   Trial counsel advised Petitioner that he should accept the plea.

15.   Petitioner rejected the plea offer.

17.   Petitioner's family asked trial counsel to file a motion to suppress.   Trial counsel testified "the family asked me to push on . . . after the deadline was over, it was superseded."

18.   Trial counsel did not believe a motion to suppress the drugs was strong but believed that the Petitioner's confession might be suppressed because Petitioner was impaired during the interrogation.   Petitioner admitted to his own conduct to the police in a recorded statement to the police on the night of his arrest.

[Doc. 50, pp. 2-4]  The Magistrate Judge proposed conclusions of law, including:[6]

3.   The Court concludes that based on the testimony and evidence presented at the evidentiary hearing on August 23, 2013, Petitioner's trial counsel provided

---

[5] The following excerpts omit portions of the findings and references to the transcript.
[6] The following excerpts omit portions of the proposed conclusions of law.

Petitioner with competent legal advice under federal law.  Furthermore, the Court concluded that trial counsel affirmatively advised Petitioner and his family to accept the plea offered by the government.

4.  The Court concludes that Petitioner's testimony is not credible or supported by objective evidence.  Petitioner testified at the evidentiary hearing that trial counsel failed to advise him to take the plea offer.  Petitioner further testified that he would have accepted the plea offer if trial counsel had advised him that he would lose the motions to suppress, get convicted and sentenced to fifteen (15) years.  In addition, there was testimony that Petitioner had the opportunity to accept a plea offer of four and a half (4 ½) years imprisonment by an assistant district attorney in Farmington for the same offenses in the federal case and he refused.  The Court determines that Petitioner's statements are self-serving and are unsupported in light of testimony offered by trial counsel and other witnesses.

5.  Based on the record, the evidence and testimony at the hearing, and applicable legal authority, the Court concludes that Petitioner received effective assistance of counsel at all times material.

[Doc. 50, pp. 5-6]

Petitioner argues:  (I) the Magistrate Judge failed to address "many factual issues raised by the evidence," including evidence undermining Trial Counsel's credibility, and this Court should therefore hold a second evidentiary hearing; (II) the Magistrate Judge placed undue weight on Petitioner's rejection of the plea offer in state court; and (III) the Magistrate Judge incorrectly applied the law.  [Doc. 53, pp. 5-18]

## I.  Credibility Determinations and Adequacy of the Magistrate Judge's PFRD

Petitioner claims that the Magistrate Judge failed to address "many factual issues raised by the evidence," including evidence undermining Trial Counsel's credibility.  This claim is intertwined with Petitioner's argument that this Court should hold a second evidentiary hearing, because the Magistrate Judge must not have given adequate consideration to these issues.

Petitioner asserts that, at the time Petitioner was considering whether to accept the plea offer, Trial Counsel had not reviewed discovery relevant to the suppression motion—including a

videotape of Petitioner's statement after arrest and reports disclosing the name of the registered owner of the car—and had not inspected the car for himself.  [Doc. 53, pp. 5-6]  "Instead," Petitioner asserts, Trial Counsel "relied solely on what the family had told him."  [Doc. 53, p. 6] Petitioner asserts that Trial Counsel probably delayed filing a suppression motion "because he had not done the work required" rather than "because he did not believe it had merit," as Trial Counsel testified.  [Doc. 53, p. 6]  Petitioner asserts that Trial Counsel did not understand the differences between federal and state law on search and seizure issues.

Some deficiencies asserted by Petitioner (if true) would probably have caused Trial Counsel to overestimate the strength of the suppression motions.  For instance, if Trial Counsel really thought that suppression for a search-and-seizure violation were as likely under the Federal Constitution as under the New Mexico Constitution, Trial Counsel could have thought a suppression motion had more merit—not less.  Even if Trial Counsel's performance were deficient, as asserted, Petitioner fails to explain what difference it made.  Petitioner argues that Trial Counsel should have advised that the motions were weak and the plea offer should be accepted—and the Magistrate Judge found that is exactly what Trial Counsel advised.  Petitioner therefore does not show that any deficient performance caused prejudice.  *See Strickland*, 466 U.S. at 691-93 (generally pointing out asserted deficiencies, without showing that these specific errors caused prejudice, does not satisfy petitioner's burden).

Apparently recognizing the problem, Petitioner argues that:  the asserted deficiencies undermine Trial Counsel's credibility, the Magistrate Judge should not have found Trial Counsel credible, and this Court should hold a second evidentiary hearing to make its own credibility determinations.  This is an attempted end run around the lack of connection between the asserted instances of deficient performance and prejudice.  The Court concludes that Petitioner has not

11

shown that Trial Counsel's credibility was undermined so that this Court should not rely on the Magistrate Judge's credibility determinations; a second evidentiary hearing is not warranted.  The Court presumes that the Magistrate Judge considered all of the facts and nevertheless concluded that Trial Counsel was credible while Petitioner was not.

### A. Assertions of Factual Issues Undermining Trial Counsel's Credibility

The Magistrate Judge's credibility determinations are findings of fact.  *See Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004).  The Magistrate Judge made an explicit factual finding that Petitioner was not credible,[7] and, by accepting Trial Counsel's testimony, made an implicit finding that Trial Counsel was credible.  The Court proceeds to consider each of the factual issues asserted in the Objections as undermining the credibility determination regarding Trial Counsel.

Petitioner argues that Trial Counsel had not fully reviewed the discovery, including Petitioner's videotaped statement and the car itself.  "Counsel's actions are usually based, <u>quite properly</u>, on informed strategic choices made by the defendant and <u>on information supplied by the defendant</u>."  *Strickland*, 466 U.S. at 691 (emphasis added).  "[W]hen the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether."  *Strickland*, 466 U.S. at 691.  A tactical decision to limit pretrial investigation "merits 'a heavy measure of deference to counsel's judgments.'"  *Petsche v. Tafoya*, 146 Fed. Appx. 306, 311 (10th Cir. 2005) (quoting *Strickland*, 466 U.S. at 691).  Trial Counsel could "quite properly" depend on the information given to him by Petitioner and Petitioner's parents

---

[7] Though included within the proposed conclusions of law, the credibility determination regarding Petitioner constitutes a factual finding.  Labels are not determinative; the Court treats findings of fact as such regardless of designation or placement within conclusions-of-law section of PFRD.  *See Houck v. Hinds*, 215 F.2d 673, 676 (10th Cir. 1954).

regarding the possible suppression motions; after all, Trial Counsel could reasonably conclude that this information was unlikely to portray the facts in a light unduly favorable to the Government's side. *See Petsche*, 146 Fed. Appx. at 311 (concluding no deficient performance if it is reasonable for counsel to conclude further inquiry likely to be fruitless). As demonstrated by the fact that Petitioner's current counsel took an appeal, there was a non-frivolous argument that Petitioner's statements should have been suppressed. *United States v. Burson*, 531 F.3d 1254 (10th Cir. 2008). Inspection of the car would have made no difference, because discovery of the drugs in the console was upheld under the inventory search exception regardless of whether they were in plain view. Even viewing the facts in the light portrayed by Petitioner and his parents, Trial Counsel still concluded that the suppression issues were not strong. Petitioner made no showing that additional investigation or review of discovery would have altered Trial Counsel's assessment of the motions, or made any difference. *See Petsche*, 146 Fed. Appx. at 313. Petitioner therefore fails to show prejudice—even if Trial Counsel were not adequately informed (a factual determination not made in this case).

Taking a negative view of Trial Counsel's approach, Petitioner asserts that Trial Counsel "was also operating under a misunderstanding of the differences between state and federal law," relying in part on state constitutional law in the motion to suppress. [Doc. 53, p. 6] The Court disagrees. Rather than demonstrating such a misunderstanding, the record shows that Trial Counsel's approach had two goals: first, to attack the credibility of the only witness against Petitioner, Officer McPheeters; and second, to hold the Government to its burden to clearly justify the warrantless search.

Neither McPheeters's Statement of Probable Cause nor the Government's response to the suppression motion relied on the inventory exception. [Doc. 1-1, pp. 4-6, Civ. No. 09-985; Doc.

48, p. 4, Cr. No. 06-252]  Trial Counsel argued the drugs in the console were not in plain view.

Trial Counsel cross-examined Officer McPheeters on whether he was testifying that the gun was

in plain view or that it was found in an inventory search, and why the officer did not get a search

warrant after arresting Petitioner for possession of the small baggie of methamphetamine.

[Trans. 10/11/06, pp. 61-63, Cr. No. 06-252]  The prosecutor objected on relevancy, stating that

a search warrant was not required under federal law.   [*Id*.]   Trial Counsel responded that

McPheeters was a Farmington police officer and the initial prosecution was in state court.   [*Id*.]

Trial Counsel could reasonably attempt to impeach the officer's professionalism and credibility

by suggesting that McPheeters—a state officer—was not complying with state constitutional

requirements.  Trial Counsel argued that McPheeters first relied on the plain view exception, and

then switched to the inventory search exception.  [*Id*. at 87]  In closing argument, Trial Counsel

explicitly argued that McPheeters was not credible and that reliance on an inventory search was a

pretext.  If Trial Counsel successfully impeached McPheeters's credibility, the Magistrate Judge

could have found that the sequence of events was not as McPheeters testified, and might have

found that the gun or additional drugs did not come into plain view, or that the officer had not

adequately established the practice and procedure to justify an inventory search.

     In its response to the suppression motion, the Government relied on the plain view

exception for the small baggie of methamphetamine and relied on the automobile exception to

justify search of the console.  [Doc. 48, p. 4, Cr. No. 06-252]  At the suppression hearing, Trial

Counsel was responding to this cursory argument.  Trial Counsel argued that the drugs in the

console were not in plain view, and that viewing the small baggie did not, by itself, give probable

cause to believe there were more drugs in the car, so that the automobile exception applied.  It

was in this context that Trial Counsel argued a search warrant was required.  [Trans. 10/11/06,

pp. 91-95, Cr. No. 06-252]  The Government had apparently assumed that the Judge would agree that the drugs in the console were in plain view.  The questioning regarding which exception McPheeters relied on was part of a reasonable attempt to hold the Government to its burden to justify the warrantless searches.  Ultimately, Judge Friedman held that the small baggie of methamphetamine was in plain view, and the drugs in the console were discovered in an inventory search.  [Trans. 10/11/06, pp. 98-100, Cr. No. 06-252]

The Court concludes on this record, on a weak motion pursued at Petitioner's request, that Trial Counsel was doing the best he could with a weak case by attempting to impeach McPheeters and his version of events.  The record does not demonstrate that Trial Counsel was laboring under a misapprehension of federal law.  And the Magistrate Judge did not find that Trial Counsel was ignorant of the differences between state and federal law—finding Trial Counsel a credible witness and determining that Trial Counsel "provided Petitioner with competent legal advice under federal law."[8]  [Doc. 50, p. 6 (emphasis added)]

Petitioner argues that the PFRD does not address testimony from Petitioner's parents that Trial Counsel had led them and Petitioner to believe that there were "strong grounds" for suppressing the evidence and challenging the purity of the drugs, and that this testimony contradicted Trial Counsel's testimony that he advised the motions were not strong and the plea offer should be accepted.  [Doc. 53, p. 6]  The Magistrate Judge found Trial Counsel a credible witness and believed his testimony.  Although the PFRD does not make an explicit finding that the parents' testimony was not credible, this finding is implicit in the reliance on Trial Counsel's testimony and the findings that Trial Counsel did advise that the motions were not strong and the plea offer should be accepted.

---

[8] Whether Trial Counsel was ignorant of federal law, and whether he provided Petitioner with advice under federal law, are questions of fact subsidiary to the Magistrate Judge's proposed conclusions of law on these issues.  *See Houck*, 215 F.2d at 676.

Petitioner argues that the PFRD does not address evidence of an effort to fire Trial Counsel after the suppression hearing.  [Doc. 53, p. 7]  Petitioner claims this evidence supports his testimony that Trial Counsel advised the suppression motions were likely to be granted, and also undermines Trial Counsel's credibility because Trial Counsel's affidavit stated that the Bursons never expressed dissatisfaction with his representation.  Again, the Magistrate Judge was not required to explicitly address every single piece of evidence.  The Magistrate Judge heard this evidence, this Court presumes that the Magistrate Judge considered all of the evidence in making its credibility findings and other factual findings, and the Magistrate Judge found that Petitioner was not a credible witness and Trial Counsel was.

Petitioner argues that Trial Counsel was wrong in testifying that the purity of the methamphetamine did not become an issue until after Petitioner rejected the plea offer, and wrong in testifying that the plea offer was made before the Government tested the purity.  [Doc. 53, p. 7]  The Magistrate Judge heard the testimony and is presumed to have considered whether Trial Counsel's failure to remember the sequence of events was the result of many years having passed (from 2006 to 2013), or undermined Trial Counsel's credibility. The PFRD recognized Petitioner's argument that Trial Counsel was ineffective in advising that if the Government failed to prove purity, the methamphetamine and firearm charges would be completely dismissed—not just reduced.  [Doc. 50, p. 1]  The Magistrate Judge, however, found that:  Petitioner was not a credible witness, and Trial Counsel advised the suppression issues were weak and the plea offer should be accepted. [Doc. 50, pp. 3-4, 6] The purity issue does not support Petitioner's argument.

Petitioner argues that Trial Counsel's "focus has been on his own interests, and he has disregarded the interests of his former client."  [Doc. 53, p. 8]  Petitioner faults Trial Counsel for not reading correspondence from Petitioner's current counsel—after Petitioner claimed

ineffective assistance, but providing the Government with an affidavit about Trial Counsel's representation. Petitioner attempts to discredit Trial Counsel regarding whether Government counsel provided caselaw to Trial Counsel in connection with preparation of his affidavit. Once again, the Magistrate Judge heard and is presumed to have considered all of this evidence. Petitioner cannot reasonably argue that defense counsel should fall on his sword rather than provide his version of what happened. After a claim of ineffective assistance, counsel is not only entitled but required to testify truthfully. To the extent that Petitioner implies that Trial Counsel did not testify truthfully, the Magistrate Judge found otherwise.

Petitioner argues that Trial Counsel's credibility is undermined by the fact that Trial Counsel's affidavit did not explicitly state that he advised Petitioner to accept the plea offer. [Doc. 53, p. 9] Yet again, the Magistrate Judge had before him both the affidavit and Trial Counsel's testimony, together with all of the other evidence presented, and made a finding of fact that Trial Counsel did advise acceptance of the plea offer.

Great deference is due to the credibility determinations made by a judge observing a witness testifying. *United States v. Burson*, 531 F.3d 1254, 1259 n.4 (10th Cir. 2008); *Wessel v. City of Albuquerque*, 463 F.3d 1138, 1145 (10th Cir. 2006). The Magistrate Judge was able to hear Trial Counsel and Petitioner testify, observe their demeanor on the witness stand, and consider their testimony in light of the weaknesses identified by Petitioner. *See United States v. Quaintance*, 608 F.3d 717, 723 (10th Cir. 2010). Having done so, the Magistrate Judge credited Trial Counsel's testimony and expressly found Petitioner's testimony "not credible or supported by objective evidence." [Doc. 50, p. 6, ¶ 4] The Court has considered other evidence in the record, including the testimony of other witnesses, together with the internal consistency and plausibility of Trial Counsel's and Petitioner's testimony. *See Anderson v. City of Bessemer City*,

470 U.S. 564, 575-76 (1985). This Court will grant the Magistrate Judge's credibility determinations the "great deference" they are due. *Quaintance*, 608 F.3d at 723.

The transcript of the August 23, 2013 evidentiary hearing shows extensive efforts by Petitioner, on a variety of topics, to discredit Trial Counsel. The Magistrate Judge heard all of this evidence, and nevertheless implicitly found Trial Counsel a credible witness—accepting Trial Counsel's testimony on the relevant issues. Upon careful review, the Court rejects Petitioner's contention that the Magistrate Judge's credibility determination is not supported by the record; indeed, many of the factual issues identified by Petitioner do not cast any doubt on the Magistrate Judge's determination that Trial Counsel was a credible witness.

### B. Second Evidentiary Hearing

Petitioner argues: "The plain language of the statute mandates de novo determinations of both legal and factual issues." [Doc. 53, p. 2] As Petitioner recognizes, however, a second evidentiary hearing is permitted—but not required. *Wildermuth v. Furlong*, 147 F.3d 1234, 1236 (10th Cir. 1998).

This Court is required to conduct de novo review when objections are filed. *Gee v. Estes*, 829 F.2d 1005, 1008-09 (10th Cir. 1987) (per curiam). It is not sufficient for this Court to merely review the PFRD; instead, the Court "must, at a minimum, listen to a tape recording or read a transcript of the evidentiary hearing." *Gee*, 829 F.2d at 1009. In *Wildermuth*, the petitioner asserted that the district court should have held a de novo evidentiary hearing because of inconsistencies in a witness's statements. The Tenth Circuit held that the filing of objections to the magistrate judge's credibility findings requires de novo review of the record, including review of the evidentiary hearing transcript; however, a second evidentiary hearing is not required if the district court adopts the magistrate judge's recommendation. *Wildermuth*, 147

F.3d at 1236; *see United States v. Raddatz*, 447 U.S. 665, 681 n.7 (1980) (observing that a district court's rejection of a magistrate's proposed credibility findings "could well give rise to serious questions which we do not reach").

Asserting that the Magistrate Judge's credibility determinations are not supported by the record, Petitioner contends that this Court should conduct a second evidentiary hearing. As discussed above, the Court disagrees with Petitioner's premise. Petitioner is not entitled to have the evidence and witnesses' credibility re-evaluated and reweighed by this Court. After thorough, de novo review of the record, the transcripts, and the Objections, the Court will adopt the Magistrate Judge's recommendation. A second evidentiary hearing is neither required nor warranted in this case.

### C.  Adequacy of the PFRD

Findings and conclusions may be insufficient if overly general and conclusory, but they need not be set out in "excruciating detail." *OCI Wyoming, L.P. v. PacifiCorp*, 479 F.3d 1199, 1204 (10th Cir. 2007) (regarding Rule 52). What is required are brief, definite, and pertinent findings and conclusions on contested matters, sufficient to show the factual basis and legal standards for the court's conclusion. *Id*. at 1203-04; *Attorney General v. Tyson Foods, Inc.*, 565 F.3d 769, 782 (10th Cir. 2009). The court is not required to make a detailed finding addressing each piece of evidence and each contention made. *Med. Dev. Corp. v. Indus. Molding Corp.*, 479 F.2d 345, 349 (10th Cir. 1973); *see Miller-El v. Cockrell*, 537 U.S. 322, 347 (2003); *Addamax Corp. v. Open Software Found., Inc.*, 152 F.3d 48, 55 (1st Cir. 1998) (stating under Rule 52 that court "was not required to make findings on every detail, was not required to discuss all of the evidence that supports each of the findings made, and was not required to respond individually to each evidentiary or factual contention made by the losing side").

Petitioner's argument is that the Magistrate Judge must have failed to consider all of the evidence, or all of Petitioner's attacks on Trial Counsel's credibility, because the PFRD does not explicitly address each piece of evidence and each contention.  But the Magistrate Judge was not required to make detailed findings on every piece of evidence and every contention raised.  This is particularly true in this case, when the Magistrate Judge made an explicit finding that Petitioner's testimony was not credible.  The Magistrate Judge issued a detailed order summarizing the issues before the evidentiary hearing, and issued a detailed PFRD discussing the contentions and evidence.  [Docs. 12, 50]  This Court is entitled to presume that the Magistrate Judge considered all of the evidence and contentions presented.  The PFRD adequately sets forth, in sufficient detail, the findings and conclusions.

## II.  Weight Merited by Petitioner's Rejection of the Plea Offer in State Court

The PFRD proposes the conclusion that Petitioner failed to show that, "but for the ineffective advice of counsel," there was a reasonable probability that he would have accepted the plea.[9]  [Doc. 50, p. 6]  *See Lafler*, 132 S. Ct. at 1385; *Carter*, 130 F.3d at 1442.  Within this proposed conclusion is the factual finding that "Petitioner's testimony is not credible."  [Doc. 50, p. 6]  The Magistrate Judge observed that Petitioner "had the opportunity to accept a plea offer of four and a half (4 ½) years imprisonment by an assistant district attorney in Farmington for the same offenses in the federal case and he refused."  [Doc. 50, p. 6]  The Magistrate Judge relied, in part, on Petitioner's rejection of the state court plea offer to reject Petitioner's testimony that he would have accepted the Government's ten-year plea offer in federal court.

---

[9] As Petitioner observes, the Government did not contest that Petitioner could show that the plea offer would not have been withdrawn and that the court would have accepted its terms.  *See Lafler*, 132 S. Ct. at 1385 (listing factors Petitioner must show).  [Doc. 47, p. 19; Doc. 26, p. 3]

The Objections argue that the Magistrate Judge placed undue weight on Petitioner's rejection of the state court plea offer.  [Doc. 53, pp. 10-12]  Relying on his testimony at the August 23, 2013 evidentiary hearing, Petitioner argues that he was concerned about the possibility that even if he accepted the plea offer in state court, he might still be prosecuted for the same offenses in federal court.  [Trans. 8/23/13, pp. 99-100, Civ. No. 09-985]  Both the State ADA and Petitioner's State Court Counsel testified that this rarely occurred, although they could give no guarantee.  [Trans. 8/23/13, pp. 13-14, 29, Civ. No. 09-985]  The Government observes that, at the time the state plea offer was made, there is no record showing this was Petitioner's concern; Petitioner could have requested an undertaking that the federal government would not prosecute if he accepted the state court plea offer.  [Doc. 48, p. 12]

The State ADA offered a plea agreement, under which both state court cases would be resolved by Petitioner's guilty plea to one fourth-degree and one third-degree felony—a maximum exposure of four and one-half years if consecutive or three years if concurrent.[10]  She testified that this was a "very generous" plea offer, "[p]robably too generous," and that she had "never bent over backwards so much for a defendant" before or afterward.  [Trans. 8/23/13, pp. 9-12, Civ. No. 09-985]  Petitioner's State Court Counsel advised Petitioner that this was a good offer, and could mean as little as a three-year sentence with as little as one and one-half years in prison under the good time provisions then applicable.  [*Id*. pp. 22, 27-28]

The Court concludes that the Magistrate Judge did not place undue weight on Petitioner's rejection of a much shorter plea offer in state court.  First, this was only one factor in the Magistrate Judge's determination that Petitioner was not a credible witness when he testified he would have taken the ten-year plea offer if advised to do so by Trial Counsel.  *See Heard*, 728

---

[10] The evidence shows that the State ADA did not intend to pursue the firearm charge; the offer was to plead guilty to only two felonies, one third- and one fourth-degree.  [Doc. 8-3; Doc. 26-2; Trans. 8/23/13, pp. 8-11, Civ. No. 09-985]

F.3d at 1183 (stating that court must make "'holistic inquiry into all of the factual circumstances surrounding the plea to determine whether the petitioner would have proceeded to trial'" (quoting *Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001)).   Second, the Court concludes that Petitioner's rejection of a very generous plea offer in state court constitutes persuasive evidence that Petitioner failed to carry his burden of showing a reasonable probability that he would have accepted the ten-year plea offer in federal court.

### III.  Assertion that the Magistrate Judge Incorrectly Applied the Law

Petitioner argues that the PFRD erroneously proposes to conclude that the presumption of reasonableness applies to an attorney's decision whether to advise acceptance of a plea offer. The PFRD paragraph at issue states:

> 3.   There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  <u>Strickland v. Washington</u>, 466 U.S. 689 (1984).   The Court concludes that based on the testimony and evidence presented at the evidentiary hearing on August 23, 2013, Petitioner's trial counsel provided Petitioner with competent legal advice under federal law.  Furthermore, the Court concluded that trial counsel affirmatively advised Petitioner and his family to accept the plea offered by the government.

[Doc. 50, pp. 5-6]  Petitioner argues:  "Because there is no strategy involved in giving adequate advice about a plea offer, there is no basis for presuming that counsel performed reasonably in this context." [11]   [Doc. 53, p. 12]   Petitioner's argument is based on his assertion that Trial Counsel did not understand the difference between federal and state law on the suppression issues, and therefore must not have given reasonable advice. [Doc. 53, pp. 13-14]  As discussed

---

[11]The Second Circuit opinion on which Petitioner relies does not support Petitioner's argument.  *Boria* held only that there was no strategic decision in whether to give any advice at all when the client's "best interests clearly require that a proffered plea bargain be accepted." *Boria v. Keane*, 99 F.3d 492, 496-98 (2d Cir. 1996).  *Boria* did observe that whether to accept a plea bargain is a "strategic decision."  *Id*. at 498.  The Second Circuit later limited *Boria*, in an opinion holding that defense counsel is not always required to expressly advise a defendant whether to take a plea offer.  *Purdy v. United States*, 208 F.3d 41, 46-48 (2d Cir. 2000).  The Court need not further consider this point, however, because the record does not show that Trial Counsel misunderstood federal law.

above, the Court disagrees with Petitioner's assertion that Trial Counsel's arguments demonstrate any such misunderstanding of federal law; the linchpin of Petitioner's argument is faulty.

Petitioner argues that the Magistrate Judge erred in relying, in part, on Petitioner's rejection of the state court plea offer. [Doc. 53, pp. 14-15] The Court disagrees with Petitioner's argument that this rejection is irrelevant, as discussed more fully above.

Petitioner argues that there was objective evidence to support Petitioner's testimony that he would have accepted the ten-year plea offer. [Doc. 53, pp. 15-16] The Court determines that the proposed conclusion of law in the PFRD (Paragraph 4), sets forth a determination that Petitioner's testimony is not credible and not sufficiently supported when all of the evidence is considered. [Doc. 53, pp. 15-16]

The Court is not persuaded by Petitioner's arguments that the Magistrate Judge's proposed conclusions of law, Paragraphs 3 and 4, are incorrect.

## CONCLUSION

The Court has conducted de novo review of the record and has also reviewed the transcripts of the August 23, 2013 and October 11, 2006 hearings. [Doc. 49, Civ. No. 09-985; 10/11/06 suppression hearing, Cr. No. 06-252] Having reviewed the motion, the briefs, the record, and the relevant law, the Court finds that Petitioner's Objections are without merit. The Court will overrule Petitioner's Objections, adopt the PFRD, deny Petitioner's motion to vacate sentence, and dismiss this case with prejudice.

The Court determines that Petitioner has failed to make a substantial showing of denial of a constitutional right, and will therefore deny a certificate of appealability.

The Court notes that the following motions filed in Cr. No. 06-252 were ruled on in Civ. No. 09-985 and should be terminated on the Court's docket.  The *Second Motion for Extension of Time to Respond to Defendant's Motion To Vacate, Set Aside Sentence by a Person in Federal Custody Filed on October 7, 2009* [Doc. 101, Cr. No. 06-252] was granted [Doc. 7, Civ. No. 09-985].  The *Unopposed Motion To Extend the Time To File his Reply in Support of his Motion To Vacate Sentence* [Doc. 103, Cr. No. 06-252] was granted [Doc. 10, Civ. 09-985].  The *Unopposed Motion of Defendant Chase Webb Burson To Extend Page Limit for his Motion To Vacate Sentence* [Doc. 94, Cr. No. 06-252] is denied as moot.

Pursuant to this Order, both cases—Civ. No. 09-985 and Cr. No. 06-252—are terminated.


**IT IS THEREFORE ORDERED THAT:**

(1)  *Chase Burson's Objections to Magistrate Judge's Proposed Findings of Fact, Conclusions of Law, and Recommended Disposition* ("Objections") [Doc. 53, Civ. No. 09-985; Doc. 136, Cr. No. 06-252] are **OVERRULED**;

(2)  *Magistrate Judge's Proposed Findings of Fact, Conclusions of Law, and Recommended Disposition* [Doc. 50, Civ. No. 09-985; Doc. 132, Cr. No. 252] are **ADOPTED** by the Court;

(3)  *Defendant Chase Webb Burson's Motion To Vacate Sentence* [Doc. 1, Civ. No. 09-985; Doc. 95, Cr. 06-252] is **DENIED**, and this case is **DISMISSED WITH PREJUDICE;** and

(4)  A certificate of appealability is **DENIED**.



_____
**UNITED STATES DISTRICT JUDGE**